FORD HULL–MAR NURSING HOME, INC., Appellant,

v.

MARR, KNAPP, CRAWFIS & ASSOCIATES, INC., Appellee.

[Cite as *Ford Hull–Mar Nursing Home, Inc. v. Marr, Knapp, Crawfis & Assoc., Inc.* (2000), 138 Ohio App.3d 174.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 98JE7.

Decided June 22, 2000.

*Geoffrey E. Webster* and *J. Randall Richards*, for appellant.

*Miller & Kyler, L.P.A., William A. Kyler* and *J. Kevin Lundholm*; *Baker, Dublikar, Beck, Wiley & Mathews* and *James F. Mathews*, for appellee.

---

WAITE, Judge.

This timely appeal arises from the decision of the Jefferson County Court of Common Pleas dismissing appellant's complaint and affirming an arbitrator's ruling in favor of appellee. For all of the following reasons, this Court affirms the judgment of the trial court.

Ford Hull–Mar Nursing Home, Inc. ("appellant") is a nursing home located near Yorkville, Ohio, in Jefferson County. After being cited by the Ohio Department of Health for several violations pertaining to, among other things, resident room sizes, appellant began investigating the possibility of renovating its

facility. After receiving a brochure from the architectural firm of Marr, Knapp, Crawfis, & Associates, Inc. ("appellee"), representatives of appellant and appellee met sometime in 1990, to further discuss the proposed renovation project. As a result of this meeting, appellee provided appellant with preliminary drawings of the project. These drawings estimated that the cost of construction as designed would range between $361,000 and $409,000.

The Ohio Department of Health regulates the construction and renovation of nursing homes through the certificate of need ("CON") process. R.C. 3702.51; Ohio Adm. Code 3701–12–232. In order to renovate a nursing home, a party must apply and be approved for a CON. *Id.* The application requires a detailed description of the project, preliminary architectural drawings and the estimated cost of the project. The ultimate cost of the project may not exceed ten percent of the estimated cost reflected in the CON without facing substantial fines from the Department of Health. *Id.*

Using the preliminary drawings and cost estimates provided by appellee, appellant applied for, and on June 18, 1992, received, a CON for the proposed project to renovate the nursing home for $471,960.47. The preliminary drawings, estimated costs and the CON were for a ten room, 6,000 square foot, single addition to the existing structure.

After receiving the CON, appellant entered into a written contract with appellee for architectural services on July 22, 1992. The contract was a standard-ized form entitled, "A.I.A. Document B141, Standard Form Agreement Between Owner and Architect." Of particular relevance to this appeal is Article 7, which provides:

"7.1 Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.

"7.4 The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."

The events subsequent to the execution of the contract are hotly disputed by the parties. Appellee argues that appellant expanded the scope of the project and directed appellee to begin work on the schematics for a thirty-one bed addition to the existing facility. Appellee maintains that it complied with this directive and to that end provided the schematics and a construction cost estimate of $1.2 million. The record reflects that appellant paid appellee's invoice for this service. Appellee further maintains that it was unaware of the existence

of the CON cost limitations. After various cost adjustments, bidding, and re-bidding, this aspect of the project was completed. Appellant was presented with another invoice from appellee for $105,025.28 for this service. Appellee argues that appellant was unable to obtain financing for the project and used this an excuse for refusing to pay appellee's invoice. As a result of appellant's refusal to pay, appellee filed a demand for arbitration pursuant to the terms of the parties' contract, seeking compensation in the amount of $129,147.90.

Appellant's version of events is markedly different. Appellant argues that it never authorized an expansion of the original project. Appellant maintains that it relied on appellee's purported expertise in the area of health care facility renovations and that it was unaware of the consequences of any significant deviation from the limitations contained in the CON. As a result of the unauthorized expansion, appellant alleges that it faced financial penalties from the Department of Health, lost profits, and incurred other damages. Accordingly, appellant answered the demand for arbitration with a counterclaim for breach of contract, negligence, and professional malpractice.

Arbitration commenced on June 25, 1996, and proceeded over a four-day period. Both parties called witnesses and submitted voluminous records and other documents in support of their respective claims and defenses. Appellee sought recovery of its invoice amount of $129,147.90 plus interest, while appellant demanded $500,000 in damages and recision of the contract. On December 26, 1996, the arbitrator issued its decision, awarding appellee $81,000 plus costs.

Upon receipt of the arbitrator's award, appellant filed an application in the Jefferson County Court of Common Pleas, seeking to vacate and/or modify the arbitration award. This matter was assigned case No. 97–CV–14. On May 5, 1997, appellant also filed a complaint against appellee in the Jefferson County Court of Common Pleas under case No. 97–CV–269, asserting essentially the same allegations as those contained in its counterclaim in arbitration. Appellee filed a motion to confirm the arbitration award on April 28, 1997. On November 25, 1997, the trial court consolidated the two cases, confirmed the arbitration award and dismissed appellant's complaint with prejudice. It is this judgment of the trial court that forms the basis of the present appeal.

In its first assignment of error, appellant argues:

"The lower court erred to the prejudice of appellant in overruling its application to vacate or modify the arbitration award and in confirming the arbitration award."

■ At the onset, this court must observe that appellant's argument in support of this assignment of error is based entirely upon the premise that appellee breached the contract at issue here, was negligent in its performance and

fraudulently induced appellant to enter into the contract. Further, appellant assumes that the arbitrator erred by not reaching these conclusions and that the trial court erred in confirming the arbitrator's decision. This argument includes comprehensive citations to relevant portions of the transcripts of the arbitration hearing and numerous references to exhibits entered into evidence before the arbitrator. Read as a whole, appellant is arguing that the arbitrator's decision finding appellant liable to appellee for $81,000 was against the manifest weight of the evidence.

Appellant's argument, however, ignores the fact that this case is procedurally distinct from the usual appellate review of judgments from a lower court of law. Rather, this matter presents an appeal of an award pursuant to binding arbitration proceedings contemplated in the language of the contract each of the parties voluntarily entered into. As such, the Ohio Arbitration Act sets forth the parameters of the available judicial review. See R.C. Chapter 2711.

R.C. 2711.10 articulates the limited situations under which an arbitration award may be vacated. That statutory section provides:

"In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:

"(A) The award was procured by corruption, fraud, or undue means.

"(B) There was evident partiality or corruption on the part of the arbitrators, or any of them.

"(C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

"(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

R.C. 2711.11 codifies the narrow conditions in which an arbitration award may be judicially modified. That statutory section provides:

"In any of the following cases, the court of common pleas in the county wherein an award was made in an arbitration proceeding shall make an order modifying or correcting the award upon the application of any party to the arbitration if:

"(A) There was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;

"(B) The arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted;

"(C) The award is imperfect in matter of form not affecting the merits of the controversy."

█ Thus it is clear that a common pleas court is precluded from examining the actual merits upon which the arbitration award is based. See, also, *Motor Wheel Corp. v. Goodyear Tire & Rubber Co.* (1994), 98 Ohio App.3d 45, 51, 647 N.E.2d 844, 847–848. While the above-cited statute pertains to the review of an arbitration award by the court of common pleas, we have previously explained that the court of appeals undertakes the same review as the trial court. *Barnesville Exempted Village School Dist. Bd. of Edn. v. Barnesville Assn. of Classified Employees* (1997), 123 Ohio App.3d 272, 704 N.E.2d 36.

█ With the scope of judicial review limited by statute, it is evident that there is a presumption of validity that attaches to an award pursuant to arbitration. *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 551 N.E.2d 186, paragraph one of syllabus. This presumption is not easily overcome. Only upon a showing of fraud, corruption, material mistake, or clear evidence that the arbitrator exceeded his or her authority will the arbitration award be disturbed. *Sparks v. Barnett* (1992), 78 Ohio App.3d 448, 605 N.E.2d 408. As such, any other legal and/or factual merits of the arbitration award cannot be addressed on appeal. *Id.* The overriding policy reason for this limited form of review is founded upon the principle that when parties voluntarily agree to submit their dispute to binding arbitration, they agree to accept the result regardless of its legal or factual accuracy. *Cleveland v. Fraternal Order of Police, Lodge No. 8* (1991), 76 Ohio App.3d 755, 603 N.E.2d 351; see, also, *Goodyear Tire & Rubber Co. v. Local Union No. 200* (1975), 42 Ohio St.2d 516, 71 O.O.2d 509, 330 N.E.2d 703.

The parameters of this court's scope of review having been set forth, we note that appellant has failed to allege any statutorily permissible grounds for this court to vacate *or* modify the arbitration award. Appellant draws this court's attention to *Huber Hts. v. Fraternal Order of Police* (1991), 73 Ohio App.3d 68, 596 N.E.2d 571, as well as *Dayton v. Fraternal Order of Police* (1991), 76 Ohio App.3d 591, 602 N.E.2d 743, for the proposition that an arbitrator's award may be overturned by a reviewing court when the award does not rationally flow from the terms of the agreement; in this case the contract between the parties. While this court agrees that this is a correct interpretation of those respective holdings, appellant's reliance on them is misplaced.

In support of its argument that the arbitration award does not rationally flow from the contract between the parties, appellant notes that appellee demanded compensation in the amount of $129,147.90 and that appellant sought damages in excess of $500,000. The fact that the arbitrator awarded appellee $81,000, appellant suggests, is evidence that this award does not rationally flow from the contract or from the issues submitted for arbitration.

We disagree with appellant's reasoning. The mere fact that the arbitrator did not award the full amount of compensation that appellee contended it was entitled to falls far short of a showing that the award has no rational support. This is so because in addition to appellee's claim for damages pursuant to specific contract provisions, appellee included a claim for services rendered based upon *quantum meruit.*

Absent some affirmative showing that the award lacks any basis or foundation, appellant is unable to overcome the presumption of validity of the award or to successfully argue that the arbitrator abused his discretion in fashioning an appropriate remedy. *Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty. v. Cincinnati* (1992), 63 Ohio St.3d 403, 407, 588 N.E.2d 802, 805–806. As such, appellant's first assignment of error lacks merit and is hereby overruled.

In the second and final assignment of error, appellant contends:

"The lower court erred to the prejudice of appellant in dismissing its complaint for breach of contract, declaratory judgment, fraud, and personal injury."

In this assignment of error, appellant challenges the trial court's dismissal of the complaint filed subsequent to appellant's application to vacate or modify the arbitration award. Specifically, appellant maintains that the arbitrator "clearly stated his intent not to consider the non-contract claims presented by [appellant]. Consequently, [appellant] was not given the opportunity to prosecute these claims."

As a preliminary matter, appellant's allegation that the arbitrator flatly refused to consider appellant's noncontract claims finds absolutely no support in the record. To the contrary, this court's comprehensive review of the more than one thousand pages of the transcribed arbitration hearing reveals that the arbitrator heard testimony and admitted evidence pertaining to appellant's counterclaim based not only on contract, but also to appellant's allegations based on general principles of negligence, fraud, and professional malpractice. For example, appellant's arbitration exhibit 24 entitled "Architect's Handbook of Professional Practice" and appellant's arbitration exhibit 25 captioned "AIA D200 Project Checklist" were introduced and admitted into evidence. Both of these exhibits were introduced to demonstrate the professional standards architects are expect-

ed to comply with and presumably to demonstrate that appellee's conduct fell short of those standards.

The dialogue between appellant's counsel and the trial court that occurred at the hearing on appellant's motion to vacate/modify the arbitration award illustrates this matter quite succinctly:

"[Appellant's counsel]: * * * for an arbitrator to say I'm not going to listen to that, it doesn't mean anything to me is wrong, that is fundamentally wrong. It is more than unjust and more than inequitable.

"[The Court]: Well, I think he listened to it. He just gave it a weight of zero; right?

"[Appellant's counsel]: *Well, he allowed it to come in.*

"[The Court]: Then he listened to it and he didn't [*sic*] just give it any weight." (Emphasis added.)

Appellant's concession that the arbitrator did in fact admit evidence and hear testimony regarding appellant's noncontract based claims is fatal to the assertion that the arbitrator did not fully consider appellant's counterclaim. This court also notes that appellant's post-hearing arbitration brief is replete with arguments asserting various claims based on grounds other than appellee's alleged breach of the contract between the parties.

In addition, where an arbitration award contains language to the effect that the award is in full settlement of the claims submitted to the arbitrator, this is sufficient evidence that all matters submitted were considered and ruled upon. *Napoleon Steel Contr., Inc. v. Monarch Constr. Co.* (1982), 3 Ohio App.3d 410, 3 OBR 476, 445 N.E.2d 743, at syllabus. The arbitration award in this case clearly states: "This award is in full settlement of all claims and counterclaims submitted to this arbitration." Thus, it is evident that appellant's contention that it was precluded from fully litigating its claims in arbitration is baseless.

■■■■ Since an "arbitration award has the same preclusive effect as a court judgment for the matters it decided," the trial court properly dismissed appellant's complaint with prejudice. *Cleveland v. Assn. of Cleveland Fire Fighters* (1984), 20 Ohio App.3d 249, 254, 20 OBR 311, 316, 485 N.E.2d 792, 798; *Whitlow v. Ingram* (Nov. 7, 1994), Mahoning App. No. 93CA74, unreported, 1994 WL 631658. While appellant takes issue with the fact that the arbitrator did not substantiate the arbitration award with written findings of fact and conclusions of law, the validity of an arbitration award is unaffected by the lack of this type of formalized statement. *Nester v. Nester* (May 23, 1995), Franklin App. Nos. 94APF09–1359 and 94APF09–1360, unreported, 1995 WL 318737. This is so because upon appeal, the reviewing court is precluded by statute from examining

any legal and/or factual merits of a decision rendered pursuant to binding arbitration in the absence of fraud or bad faith on the part of the arbitrator. *Menardi v. Petrigalla* (1983), 11 Ohio App.3d 9, 11 OBR 21, 462 N.E.2d 1246, at syllabus. Accordingly, appellant's second assignment of error is not well taken.

Finding no merit in either of appellant's two assignments of error, each is overruled, and the judgment of the Court of Common Pleas, Jefferson County, Ohio, is hereby affirmed.

*Judgment affirmed.*

VUKOVICH and GENE DONOFRIO, JJ., concur.