DECISION AND JUDGMENT ENTRY
{¶ 1} The Fraternal Order of Police, Ohio Labor Council, Inc. (Union) appeals a judgment granting the Jackson County Sheriff's (Sheriff) motion to vacate a labor arbitration award rendered in the Union's favor. The Union contends the trial court exceeded the scope of its review by substituting its judgment for that of the arbitrator. It argues that the arbitrator's award drew its essence from the collective bargaining agreement and thus, should not have been vacated. Having reviewed the record, we conclude the trial court should not have vacated the portions of the award that addressed the grievants' bumping rights and the Sheriff's use of auxiliary officers and special deputies. However, we conclude that the arbitrator exceeded his powers by examining the propriety of the commissioners' budget cut. Thus, the trial court properly vacated the portion of the award that addressed the necessity of the layoffs.
 {¶ 2} This matter stems from an arbitration proceeding conducted under the collective bargaining agreement (CBA) between the Sheriff and the Union. Article 8 of the CBA sets forth a three-step procedure for employee grievances. The final step in that procedure provides for binding arbitration in the event a grievance is not satisfactorily settled at an earlier stage.
 {¶ 3} On August 6, 2001, Sheriff John Shasteen sent the Union a letter informing it that he intended to lay off three bargaining unit employees. That same day, Sheriff Shasteen sent letters to Deputy B. Scott Conley, Dispatcher Steve Wilbur, and Dispatcher Sue Yates informing them that they were being laid off effective August 27, 2001. According to the Sheriff, the layoffs were necessary due to a shortfall of funds.
 {¶ 4} Upon receiving his layoff notice, Deputy Conley filed a grievance claiming that the layoffs were improper because they were unnecessary. Two weeks later, Dispatcher Wilbur filed a grievance claiming that he was denied his bumping rights into the jail. Subsequently, Deputy Conley filed a second grievance claiming that he too was denied his bumping rights into the jail. Deputy Conley then filed a third grievance claiming that "auxiliaries" and "specials" were working while bargaining unit members were laid off.
 {¶ 5} The employees' grievances made their way through the first two steps of the grievance procedure with unfavorable results. Consequently, the Union requested an arbitration hearing. In December 2001, the arbitrator held a hearing to resolve the following three issues: (1) whether the Sheriff violated the CBA by using auxiliary officers and special deputies while bargaining unit members were laid off; (2) whether the Sheriff violated the CBA when he refused to permit the grievants to bump into the jail; and (3) whether the layoffs were justified.
 {¶ 6} In March 2002, the arbitrator issued a decision and award sustaining the four grievances. The arbitrator found that: (1) the Sheriff violated the CBA by using auxiliary officers and special deputies to perform bargaining unit work while the grievants were laid off; (2) both grievants were qualified to work as corrections officers in the jail and the Sheriff's refusal to allow the grievants to exercise their bumping rights violated the CBA; and (3) the CBA allowed for layoffs only when the employer determined that a layoff or job abolishment was necessary due to lack of work or lack of funds; this placed the burden on the employer to provide a valid justification for any layoff, but the Sheriff failed to sustain this burden. The arbitrator's award reinstated Deputy Conley and Dispatcher Wilbur to their previous positions with back pay and benefits.
 {¶ 7} Subsequently, the Sheriff filed a motion in the Jackson County Court of Common Pleas to vacate the arbitration award. The Union responded by filing an answer and counterclaim with a motion to confirm the arbitration award. In September 2002, the trial court issued a decision vacating the arbitration award and denying the grievances. The court concluded that the arbitrator exceeded his authority when resolving the issues and that the arbitrator's decision was in express conflict with the CBA. The Union now appeals and raises the following assignments of error:
 {¶ 8} "ASSIGNMENT OF ERROR NO. 1
 {¶ 9} "The Court of Common Pleas erred to the prejudice of Appellant when it determined that the arbitrator exceeded his authority by reviewing the actions of the employer pursuant to the collective bargaining agreement.
 {¶ 10} "ASSIGNMENT OF ERROR NO. 2
 {¶ 11} "The Court of Common Pleas erred to the prejudice of the Appellant when it substituted its interpretation of the collective bargaining agreement for the interpretation made by the arbitrator.
 {¶ 12} "ASSIGNMENT OF ERROR NO. 3
 {¶ 13} "The Court of Common Pleas erred to the prejudice of the Appellant when it misapplied the test for overturning an arbitrator's award pursuant to O.R.C. 2711.10.
 {¶ 14} "ASSIGNMENT OF ERROR NO. 4
 {¶ 15} "The Court of Common Pleas erred to the prejudice of the Appellant by not awarding interest on all monies due and payable."
 {¶ 16} Because the Union's first, second, and third assignments of error all concern the same issue, i.e., whether the trial court properly vacated the arbitration award, we will consider them together.
 {¶ 17} As a matter of policy, the law favors and encourages arbitration. Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMREdn. Assn. (1986), 22 Ohio St.3d 80, 84, 488 N.E.2d 872, quoting Campbellv. Automatic Die Prod. Co. (1954), 162 Ohio St. 321, 329. Accordingly, courts will make every reasonable indulgence to avoid disturbing an arbitration award. Id. See, also, Stehli v. Action CustomHomes, Inc. (2001), 144 Ohio App.3d 679, 682, 761 N.E.2d 129. Arbitration awards are presumed valid and a reviewing court may not substitute its judgment for that of the arbitrator. Findlay City School Dist. Bd. ofEdn. v. Findlay Edn. Assn. (1990), 49 Ohio St.3d 129, 132, 551 N.E.2d 186. See, also, Marra Constructors, Inc. v. Cleveland Metroparks Sys. (1993),82 Ohio App.3d 557, 562, 612 N.E.2d 806.
 {¶ 18} Because arbitration awards are presumed valid, the trial court's power to vacate a final, binding arbitration award is limited. The legislature has specified the narrow circumstances under which a trial court may vacate an arbitration award. See R.C. 2711.10. Under R.C. 2711.10(D), a trial court may vacate an arbitration award if "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made." An arbitrator acts within his powers so long as his award "draws its essence from the collective bargaining agreement." See Queen City LodgeNo. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc. v.Cincinnati (1992), 63 Ohio St.3d 403, 406, 588 N.E.2d 802, quoting UnitedSteelworkers of America v. Ent. Wheel Car Corp. (1960), 363 U.S. 593,80 S.Ct. 1358, 4 L.Ed.2d 1424. An award draws its essence from the agreement "when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful."Mahoning, 22 Ohio St.3d 80, paragraph one of the syllabus. Conversely, an award departs from the essence of the collective bargaining agreement when "(1) the award conflicts with the express terms of the agreement and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." Ohio Office of CollectiveBargaining v. Ohio Civ. Serv. Emp. Assn., Local 11, AFSCME, AFL-CIO
(1991), 59 Ohio St.3d 177, 572 N.E.2d 71, syllabus.
 {¶ 19} A right of appeal exists from a trial court order that confirms, modifies, corrects, or vacates an arbitration award. R.C.2711.15; Warren Edn. Assn. v. Warren City Bd. of Edn. (1985),18 Ohio St.3d 170, 173-74, 480 N.E.2d 456, quoting Lockhart v. AmericanRes. Ins. Co. (1981), 2 Ohio App.3d 99, 440 N.E.2d 1210. However, appellate review focuses upon the order issued by the trial court. WarrenEdn. Assn., 18 Ohio St.3d at 174, quoting Lockhart. See, also, Portsmouthv. Internatl. Assn. of Fire Fighters, Local 512, 139 Ohio App.3d 621,626, 2000-Ohio-1982, 744 N.E.2d 1263; Creatore v. Robert W. Baird Co., 154 Ohio App.3d 316, 2003-Ohio-5009, 797 N.E.2d 127, at ¶ 8. We will not review the substantive merits of the original arbitration award beyond determining if it exceeded the arbitrator's authority or failed to draw its essence from the agreement. See Brumm v. McDonald Co.Securities, Inc. (1992), 78 Ohio App.3d 96, 603 N.E.2d 1141, citing Oil,Chemical Atomic Workers Internatl. Union, AFL-CIO, Local 7-629 v. RMICo. (1987), 41 Ohio App.3d 16, 534 N.E.2d 110.
 {¶ 20} In its first three assignments of error, the Union contends the trial court erred by vacating the arbitration award on the basis that the arbitrator exceeded his powers and departed from the essence of the CBA. Thus, we must determine whether the arbitrator's award is rationally derived from the terms of the CBA.
 {¶ 21} Article 4 of the CBA sets forth the rights of management. Section 4.1 of Article 4 states: "Except as specifically limited by thisAgreement, the Employer reserves and retains each of its statutory and common law rights express and inherent. Such rights shall include, but are not limited to, those rights enumerated in [R.C. 4117.08(B) and (C)]. Examples of such rights reserved and retained by the Employer include, but are not limited to, the following: A. The sole right to hire, discipline, and discharge for just cause, layoff, and promote; * * * to transfer employees (including the assignment and allocation of work) within departments or to other departments; * * *. B. To determine all matters of managerial policy which include, but are not limited to, areas of discretion or policy such as the functions, services, and programs of the Employer; available funds and budget; * * *.
* * * E. To maintain or increase the efficiency and/or effectiveness of Employer services; to relieve employees from their duties because of lackof funds or lack of work; * * *." (Emphases added.)
 {¶ 14} However, Article 12, entitled "Layoff and Recall", specifically limits the rights reserved in Article 4. Following are those sections relevant to this appeal: "Section 12.2 Layoff Notification. When theEmployer determines that a layoff or job abolishment is necessary due tolack of work or lack of funds, they will notify the affected employees at least twenty-one (21) calendar days in advance of the effective date of the layoff or job abolishment. * * * Section 12.3 Layoff. The Employer shall determine in which classification layoffs will occur and layoffs of Bargaining Unit employees will be by seniority. Employees shall be laid off within each classification in order of seniority, beginning with the least senior and progressing to the most senior up to the number of employees that are to be laid off. * * * All temporary, intermittent,part-time, or seasonal employees shall be laid off prior to any BargainingUnit employees and in no case shall such non-Bargaining Unit employees beused in such a manner as to affect the functional layoff by denyingBargaining Unit member work to Bargaining Unit members. Section 12.4Bumping. Bargaining Unit members may bump into any classification in which they are both (1) qualified and (2) in which they have previously satisfactorily performed the duties in the Jackson County Sheriff's Office. * * *." (Emphases added.)
 {¶ 15} Finally, Article 34 of the CBA sets forth the work that only bargaining unit members are to perform. Specifically, Section 34.1 states: "All Bargaining Unit work shall be worked by Bargaining Unit Members. If the need for overtime work exists the members shall have first option within their respective classifications to work overtime. The Employer will not contract or privatize Bargaining Unit Work when such action would displace or cause a lay off of Bargaining Unit Members."
 {¶ 16} Next, we consider the trial court's findings concerning the three issues addressed in the arbitrator's decision. We begin with the Sheriff's use of auxiliary officers and special deputies. The arbitrator concluded that the Sheriff's use of auxiliary officers and special deputies while bargaining unit members were laid off violated Section 34.1 of the CBA. He found that under Section 34.1 "* * * auxiliaries and specials are prevented from performing any duties performed by regular deputies when regular deputies are on lay off." (Emphasis in original.) He further found that "[t]he evidence is persuasive that after the lay offs, auxiliaries and specials were performing substantial amounts of bargaining unit work, to the extent of eight and nine hour shifts at a time, and even working some regular shifts." Because Section 34.1 requires that "all bargaining unit work" be done by bargaining unit members, the arbitrator sustained the grievance. The trial court, however, concluded the arbitrator exceeded his authority concerning this issue. The trial court found that "Section 34.1 of the [CBA] deals with the privatization by contracting of work by a Sheriff's Office when such action is due to, or the result of, the lay off of [bargaining unit] employees." The trial court concluded that in the present situation, the Sheriff's use of auxiliary officers and special deputies did not change due to the layoffs. The trial court further concluded that Section 34.1 does not extend to the use of unpaid special deputies and auxiliary officers. It concluded that Section 34.1 deals solely with "contracting for consideration for performance of the duties * * * of the laid off employees."
 {¶ 17} Instead of limiting its review to whether the arbitration award drew its essence from the CBA, the trial court substituted its judgment for that of the arbitrator. That is, the trial court engaged in a review of the correctness of the award. Such a review exceeds the scope of the trial court's authority. See Southwest Ohio Regional Transit Auth. v.Amalgamated Transit Union, Local 627, 91 Ohio St.3d 108, 110,2001-Ohio-294, 742 N.E.2d 630. When parties submit their dispute to binding arbitration, they agree to accept the result regardless of its legal or factual accuracy. Internatl. Assn. of Fire Fighters, Local 512,139 Ohio App.3d at 627; Ford Hull-Mar Nursing Home, Inc. v. Marr, Knapp,Crawfis Assoc., Inc. (2000), 138 Ohio App.3d 174, 179, 740 N.E.2d 729;Cleveland v. Fraternal Order of Police, Lodge No. 8 (1991),76 Ohio App.3d 755, 758, 603 N.E.2d 351. An arbitrator's award is not subject to reversal simply because the reviewing court disagrees with the arbitrator's findings of fact or with his interpretation of the contract. See Goodyear Tire Rubber Co. v. Local Union, No. 200
(1975), 42 Ohio St.2d 516, 520, 330 N.E.2d 703. Here, the trial court proceeded to independently interpret Section 34.1 of the CBA. However, it is the arbitrator's interpretation of the agreement, not the trial court's, that governs the parties. See Hillsboro v. Fraternal Order ofPolice, Ohio Labor Council, Inc. (1990), 52 Ohio St.3d 174,556 N.E.2d 1186, syllabus. The trial court went beyond the scope of its review when it ignored the arbitrator's interpretation of the agreement and independently interpreted Section 34.1 of the CBA.
 {¶ 18} The arbitrator determined that the Sheriff violated the CBA by using auxiliary officers and special deputies while bargaining unit employees were laid off. Whether this finding was legally or factually correct is not for us or the trial court to decide. Instead, a court's review is limited to a determination of whether the arbitrator's finding drew its essence from the CBA. Section 34.1 states that "[a]ll Bargaining Unit work shall be worked by Bargaining Unit Members." The arbitrator found that auxiliary officers and special deputies were performing bargaining unit duties. Therefore, he concluded that the use of these auxiliary officers and special deputies while bargaining unit members were laid off violated Section 34.1 of the CBA. While we may not have reached the same result, this conclusion clearly draws its essence from the CBA. Accordingly, the trial court erred in vacating this portion of the arbitrator's award.
 {¶ 19} Second, the arbitrator concluded that the Sheriff violated Section 12.4 of the CBA when he refused to permit the grievants to bump into the jail. He stated: "The evidence is persuasive that the Grievants in this case were qualified in law enforcement procedures sufficient to work as Correction Officers in the jail. Both performed some overlapping correction duties in the old jail and the Arbitrator fails to see any substantive effect on the duties of a corrections officer whether in the old jail or the new jail." Because Section 12.4 permits bargaining unit members to bump into a classification if they are qualified and have previously satisfactorily performed the duties, the arbitrator sustained the grievances. The trial court, however, concluded that the arbitrator exceeded his authority because "[t]he evidence is clear that none of the employees had the requisite training, nor had previously held the position of corrections officer with the Jackson County Sheriff's Office."
 {¶ 20} A trial court has no authority to review an arbitrator's factual conclusions. See Amalgamated Transit Union. See, also, Creatore,154 Ohio App.3d at 322, citing Russo v. Chittick (1988),48 Ohio App.3d 101, 548 N.E.2d 314. Thus, the trial court exceeded the scope of its authority when it independently reviewed the grievants' credentials to determine whether they had the requisite training to work as corrections officers. The arbitrator found that the grievants were sufficiently qualified in law enforcement procedures to exercise their bumping rights under Section 12.4 of the CBA. Whether this finding was accurate is not for us or the trial court to decide. Because the arbitrator's finding on this issue clearly draws its essence from Section 12.4 of the CBA, the trial court erred in vacating this portion of the arbitrator's award.
 {¶ 21} Finally, the arbitrator concluded that the Sheriff violated the CBA when he laid the grievants off. The arbitrator found that Article 12, Section 12.2 of the CBA only permits the Sheriff to implement layoffs when he determines that a "layoff or job abolishment is necessary due to lack of work or lack of funds." The arbitrator concluded that this provision placed the burden on the Sheriff to provide a valid justification for any layoff and that the Sheriff "must show more than just a reasonable belief that there may be lack of funds by the end of the year sufficient to create a necessity to lay off [bargaining unit] employees." Moreover, the arbitrator found that the Sheriff could not escape his burden by shifting the blame to the county commissioners and then arguing that the commissioners were not a party to the CBA. Thus, the arbitrator sought evidence from the commissioners regarding the decrease in the Sheriff's budget. When no commissioners appeared to testify about the budget cut, the arbitrator concluded that "* * * the budget cut was arbitrary and unreasonable, and therefore the lay offs were also arbitrary and unreasonable * * *." Moreover, the arbitrator found that the money that would be saved from the layoffs was nominal. Consequently, the arbitrator found that the Sheriff failed to satisfy his burden of justifying the layoffs. The trial court, however, concluded that the arbitrator exceeded his authority because "it is not within the power nor (sic) authority of the arbitrator to decide how the elected commissioners of Jackson County * * * fund the various departments of its political subdivision. * * * [T]he decision of how that is done is a decision of the elected political authorities and not of an arbitrator. The Defendant Fraternal Order of Police failed to show that adequate funding was available and that the lay-offs were improper."
 {¶ 22} Initially, we note that the Sheriff did not challenge whether the issue of the necessity of the layoffs was capable of being arbitrated. In discussing arbitration, Article 8, Section 8.8 of the CBA provides: "The questions of arbitrability of a grievance may be raised by either party before the arbitration hearing on the grievance, on the grounds that the matter is non-arbitrable or beyond the arbitrator's jurisdiction." Because the Sheriff did not challenge the arbitrability of this issue, we will assume that arbitration of this grievance was proper.
 {¶ 23} We conclude that the arbitrator exceeded his powers by reviewing the propriety of the budget cut. "`[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of justice.'" OhioOffice of Collective Bargaining, 59 Ohio St.3d at 180, quoting UnitedSteelworkers of America v. Ent. Wheel Car Corp. (1960), 363 U.S. 593,80 S.Ct. 1358, 4 L.Ed.2d 1424. The plain language of Section 12.2 provides that "[w]hen the Employer determines that a layoff * * * is necessary due to * * * lack of funds, they will notify the affected employees * * *." Article 1, Section 1.1 of the CBA indicates that the Jackson County Sheriff is the entity referred to as the "Employer". Although the county commissioners are not included within the definition of "Employer", the arbitrator treated them as if they were. In his decision, the arbitrator states: "[T]he County Commissioners herein are a party to the Agreement, at the very least to provide funding for the Sheriff's Office." Furthermore, the arbitrator places great emphasis on the fact that the county commissioners did not appear at the hearing to justify the budget cut.[2] In fact, the arbitrator goes so far as to declare the budget cut arbitrary and unreasonable. However, the county commissioners are not parties to the CBA and are not bound by the arbitrator's decision. Moreover, Section 12.2 does not authorize the arbitrator to review the commissioners' allocation of county funds. Thefocus under Section 12.2 is on whether the layoffs are justified notwhether the budget cut is justified. Accordingly, we conclude the arbitrator exceeded his powers and departed from the essence of the CBA when he reviewed the commissioners' decision to reduce the funding for the Sheriff's Office.
 {¶ 24} Recently, in Fraternal Order of Police, Ohio Labor Council,Inc. v. Perry Cty. Commrs., Perry App. No. 02CA14, 2003-Ohio-4038, the Fifth District Court of Appeals reached the same conclusion after considering facts similar to those presented here. In Perry Cty., various employees filed grievances protesting layoffs imposed by the Perry County Sheriff's Office. When the grievances were not resolved, they proceeded to binding arbitration in accordance with the CBA. The CBA provision at issue stated: "[W]hen the Employer determines that a long-term layoff or job abolishment is necessary, it shall notify the affected employees * * *." Id. at ¶ 23. The CBA identified the Perry County Sheriff as the entity referred to as the "Employer". Id. at ¶ 25. Following a hearing, the arbitrator sustained the grievances and ordered the grievants reinstated to their former positions.[3] Subsequently, the Perry County Commissioners and the Perry County Sheriff's Office filed a motion to vacate the award. The Perry County Court of Common Pleas vacated the award, concluding the arbitrator had exceeded his powers and departed from the essence of the agreement. The Union then appealed. The Fifth District Court of Appeals observed that the arbitrator had found that the county commissioners were a party to the agreement and that it was their budgetary decisions that created the layoff. See Id. at ¶ 24 The court then stated; "While the county commissioners are the legislative authority for the county, and are responsible for setting the amount of the sheriff's budget, it is erroneous to include them in the definition of employer under this contract, and it is erroneous to review whether it was necessary for the Board of County Commissioners to cut the sheriff's budget." Id. at ¶ 25. The Fifth District Court of Appeals concluded: "[T]o the extent the arbitrator reviewed the county's financial state, and the appropriateness of the commissioners' decision in allocating the county funds, the arbitrator did in fact exceed his powers, and departed from the essence of the Collective Bargaining Agreement." Id. at ¶ 26.
 {¶ 25} Like the Fifth District, we conclude the arbitrator departed from the essence of the agreement by reviewing the commissioners' decision in allocating the county funds. If the parties intended the commissioners to be a party to the agreement, they could have included the commissioners within the definition of "Employer". However, the parties did not make the commissioners a party to the agreement. Whether the arbitrator agreed with the budget cut or not, he was required to take the budget cut into account when reviewing whether the layoffs were justified. Thus, the arbitrator exceeded his powers when he embarked on an examination of the propriety of the budget cut. Because the arbitrator exceeded his powers, we conclude the trial court properly vacated this portion of the arbitrator's award.
 {¶ 26} In summary, we conclude that the portion of the award that addressed the necessity of the layoffs cannot be rationally derived from the CBA. Thus, this portion of the arbitrator's award departs from the essence of the agreement and the trial court did not err in vacating it. However, we conclude that the portions of the award that addressed the grievants' bumping rights and the Sheriff's use of auxiliary officers and special deputies were rationally supported by the CBA and were not arbitrary, capricious, or unlawful. These portions of the arbitrator's award drew their essence from the CBA. In contrast, the court's review of these issues extended beyond the permissible reach of its review, reinterpreting factual matters and contractual language without the authority to do so. Because these portions of the arbitrator's award drew their essence from the CBA, the trial court erred in vacating them. Accordingly, we sustain the Union's first, second, and third assignments of error in part.
 {¶ 27} In its fourth assignment of error, the Union contends it is entitled to prejudgment interest on the arbitration award pursuant to R.C. 1343.03.
 {¶ 28} R.C. 1343.03(A) provides in pertinent part: "In cases * * * when money becomes due and payable upon any * * * instrument of writing * * * upon any settlement between parties * * * and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of * * * a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum * * * unless a written contract provides a different rate of interest * * *." Prejudgment interest is not imposed to punish the party responsible for the underlying damages. Royal Elec. Constr. Corp. v. Ohio State Univ.
(1995), 73 Ohio St.3d 110, 117, 652 N.E.2d 687. Rather, "it acts as compensation and serves ultimately to make the aggrieved party whole."Id. "Indeed, to make the aggrieved party whole, the party should be compensated for the lapse of time between accrual of the claim and judgment." Id.
 {¶ 29} Here, the trial court had no need to consider the issue of prejudgment interest because it vacated the arbitrator's award. However, we have concluded that the trial court erred in vacating certain portions of the arbitrator's award. Therefore, we remand this matter to the trial court for further proceedings consistent with this opinion, including a determination of the issue of prejudgment interest.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND CAUSE REMANDED.
Kline, P.J.: Concurs in Judgment and Opinion.
Evans, J.: Not Participating.
[2] The arbitrator's decision states: "As indicated by the Union, if the County Commissioners had a valid explanation for the Sheriff's budget cut, at least one of them would have appeared at the arbitration hearing to present such. Said fact leaves the Arbitrator with the opinion that there was no valid explanation for said budget cut * * *. As a result, the overall record is persuasive that the budget cut was arbitrary and unreasonable * * *."
[3] The arbitrator's decision in the present case quotes with approval from the arbitrator's decision in the Perry County case. For example, the arbitrator states: "For similar reasons as indicated by Arbitrator * * * the County Commissioners herein are a party to the Agreement, at the very least to provide funding for the Sheriff's Office. Many of the same things must be said that cannot be said any better than stated by Arbitrator * * *. For example, `by law the sheriff must preserve the public peace. Additionally the County Commissioners are legally required to provide funding for the Sheriff's Office. That funding must be sufficient for the Sheriff to preserve the public peace.'"