OPINION
{¶ 1} In case number 04MA238, defendants-appellants Roger and Wendy Woods (the Woods) appeal the Mahoning County Common Pleas Court's confirmation of the arbitration award for plaintiff-appellee Handel's Enterprises, Inc. (Handel's). The issue in this case is whether the common pleas court's confirmation of the arbitrators' award was erroneous. In case number 05MA70, plaintiff-appellant/cross-appellee Handel's appeals the Mahoning County Common Pleas Court's denial of attorney fees and the trial court's computation of prejudgment interest. Defendants-appellants/cross-appellants the Woods filed a cross-appeal claiming the trial court erred in granting prejudgment interest. The issues presented are whether the trial court erred in denying the motions for attorney fees and whether the trial court erred in awarding prejudgment interest. For the reasons stated below, the judgments of the trial court in appellate case numbers 04MA238 and 05MA70 are hereby affirmed.
 STATEMENT OF CASE {¶ 2} In March 1999, the Woods entered into a franchise agreement with Handel's. The agreement granted the Woods a 20-year franchise to use Handel's system of operating a retail ice cream parlor. Under the agreement, the Woods agreed to pay Handel's a royalty fee of five percent of gross revenue income and to continuously and exclusively operate the store as Handel's Ice Cream Parlor for 20 years. The franchise agreement also contained an arbitration clause stating that: "all questions as to rights and obligations arising under the terms of the contract are subject to arbitration." Franchise Agreement 19.03. The agreement further stated that if a "dispute should arise under this contract, either party may within 60 days make a demand for arbitration by filing a demand in writing with the other." Franchise Agreement 19.03(i).
 {¶ 3} In December 2001, the Woods stopped remitting royalty payments to Handel's. In April 2002, the Woods sold the franchise location to Herb Gillner, who purchased the location for the express purpose of converting it into a Bruster's Ice Cream store. During this time, Handel's and the Woods were allegedly discussing the possibility that Handel's would buy the franchise location.
 {¶ 4} Due to the above actions, which were in violation of the franchise agreement, on October 3, 2002, Handel's filed a demand for arbitration. The Woods filed an answer to the demand for arbitration admitting that they sold the franchise, but contended that the sale was not a breach of the contract. The Woods raised contractual defenses and counterclaimed alleging wrongful termination of the franchise agreement.
 {¶ 5} The cause proceeded to a three-person arbitration panel. The arbitration lasted three days and consisted of six witnesses and over 50 exhibits. The panel issued an award in Handel's favor for $278,963.55, plus $45,598.14 in attorney fees and $9,337.50 in filing fees. The total award amounted to $334,899.19.
 {¶ 6} On February 10, 2004, Handel's filed a motion to confirm the arbitration award. The Woods answered the motion on March 18, 2004, and filed a motion to vacate the arbitration award. The Woods motion stated, along with other claims, that the arbitration panel exceeded its jurisdiction because the demand for arbitration was filed over 60 days after the dispute arose and because the enforcement of the award was contrary to public policy. Handel's filed a reply to the answer on April 6, 2004.
 {¶ 7} The Woods then filed a motion for summary judgment. In response, Handel's filed a brief in support of the motion to confirm the arbitration award. The Woods motion for summary judgment was similar to its motion to vacate arbitration. It argued that the arbitration award could not be confirmed because enforcement of the award was contrary to public policy in that the franchise agreement was unenforceable because of statutory deficiencies. It also argued the demand for arbitration did not comply with the arbitration agreement since it was not timely made. On September 27, 2004, after oral arguments, the court issued an order confirming the arbitration award. The court did not address the timeliness issue raised by the Woods, rather, it held that all arguments as to the validity/enforceability of the contract should have been raised at the arbitration proceedings. Thus, it overruled the Woods motion for summary judgment and confirmed the arbitration award.
 {¶ 8} Handel's then filed motions for prejudgment interest, post-judgment interest, and attorney fees on March 29, 2005. The trial court awarded prejudgment interest from the date the award was payable and awarded post-judgment interest. However, it denied the motion for attorney fees.
 {¶ 9} In case number 04MA238, the Woods appeal from the common pleas court's confirmation of the arbitration award. In case number 05MA70, Handel's appeal from the trial court's denial of attorney fees and also find fault with the trial court's determination that prejudgment interest accrued from the date the award was payable. The Woods cross-appeal the trial court's grant of prejudgment interest.
 {¶ 10} For purposes of judicial economy, this court held that both cases would be heard together. (06/02/05 J.E. 04MA238). However, for ease of understanding, this opinion is divided by case number.
 CASE NO. 04MA238 {¶ 11} The Woods sought to vacate the arbitration award on the basis of R.C. 2711.10. The power of the common pleas court to vacate an award under R.C. 2711.10 is very limited. This statute states:
 {¶ 12} "In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:
 {¶ 13} "(A) The award was procured by corruption, fraud, or undue means.
 {¶ 14} "(B) There was evident partiality or corruption on the part of the arbitrators, or any of them.
 {¶ 15} "(C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
 {¶ 16} "(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." R.C.2711.10.
 {¶ 17} A right of appeal exists from a common pleas court order that confirms, modifies, corrects or vacates an arbitration award under R.C. 2711.10. Jackson Cty., Ohio Sheriff v. TheFraternal Order of Police Ohio Labor Council, Inc., 4th Dist. No. 02CA15, 2004-Ohio-3535, ¶ 19, citing R.C. 2711.15 and WarrenEdn. Assn. v. Warren City Bd. of Edn. (1985), 18 Ohio St.3d 170,173-174. On appellate review, this court is confined to an evaluation of the order issued by the common pleas court pursuant to R.C. 2711.10. Warren Edn. Assn., 18 Ohio St.3d at 174. The substantive merits of the award are not reviewable absent evidence of material mistake or extensive impropriety. Id.
 {¶ 18} Thus, judicial review of an arbitration award is "very narrow." Cuyahoga Community College v. District 925, Serv. Emp.Internatl. Union AFL-CIO (1988), 42 Ohio App.3d 166, 170. Accordingly, an arbitrator's award carries a strong presumption of validity. Association of Cleveland Fire Fighters, #93 v. Cityof Cleveland, 8th Dist. No. 83726, 2004-Ohio-3608, ¶ 6, citingBoard of Edn. of the Findlay City School Dist. v. Findlay Edn.Assn. (1990), 49 Ohio St.3d 129.
 {¶ 19} The policy underlying the narrow standard of review and the presumption of validity is best stated in Motor WheelCorp. v. Goodyear Tire Rubber Co. (1994), 98 Ohio App.3d 45,52, as follows:
 {¶ 20} "The limited scope of judicial review of arbitration decisions comes from the fact that arbitration is a creature of contract. Contracting parties who agree to submit disputes to an arbitrator for final decision have chosen to bypass the normal litigation process. If parties cannot rely on the arbitrator's decision (if a court may overrule that decision because it perceives factual or legal error in the decision), the parties have lost the benefit of their bargain. Arbitration, which is intended to avoid litigation, would instead become merely a system of `junior varsity trial courts' offering the losing party complete and rigorous de novo review. See National Wrecking Co.v. International Bhd. of Teamsters, Local 731 (C.A. 7, 1993),990 F.2d 957."
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 21} "THE TRIAL COURT ERRED BY CONFIRMING AND NOT VACATING AN ARBITRATION AWARD THAT IS CONTRARY TO THE EXPRESS TERMS OF THE FRANCHISE AGREEMENT PROVIDING FOR ARBITRATION."
 {¶ 22} The Woods contend that the common pleas court erred when it failed to vacate the arbitration award because the arbitrators exceeded their power. This is a basis for vacating an award under R.C. 2711.10(D).
 {¶ 23} Generally, an arbitrator will not be found to have exceeded his authority, so long as the award "draws its essence" from the underlying contract. Findley, 49 Ohio St.3d at 132. "An arbitrator's award draws its essence from a[n] * * * agreement when there is a rational nexus between the agreement and award, and where the award is not arbitrary, capricious or unlawful." Mahoning Cty. Bd. of Mental Retardation Developmental Disabilities v. Mahoning Cty. TMR Edn. Assn.
(1986), 22 Ohio St.3d 80, 83-84.
 {¶ 24} Under this assignment of error, the Woods make two arguments. The first argument is based upon the untimeliness of Handel's demand for arbitration. The second argument addresses whether the arbitration panel had the authority to determine the validity of the franchise agreement.
 Timeliness of Demand {¶ 25} The demand for arbitration occurred on October 3, 2002. Beginning in December 2001, royalty fees were not paid. In April 2002, the franchise location was sold to a competitor. On April 29, 2002, Handel's informed the Woods that the franchise had been terminated. Given these dates, the Woods maintain that the demand for arbitration was not made within the 60 days provided by the contract and, as such, the arbitrators exceeded their power by making an arbitration award. They contend that the common pleas court erred when it failed to vacate the award based upon this reasoning.
 {¶ 26} The record before the common pleas court does not contain a transcript of the arbitration hearing, however, from the attachments to the filings made to the common pleas court it is clear that the alleged untimeliness of the demand for arbitration was made to the panel.
 {¶ 27} Attached to Handel's reply to the Woods' motion to vacate the arbitration award are three documents which show that the untimeliness issue was raised at least three times to the panel. The first document is the "Preliminary Ruling" issued by the panel. In this ruling, the panel states that before it are several filings concerning the timeliness of the demand for arbitration and one of those filings is the Woods' motion to dismiss. The panel stated in this ruling that the motion to dismiss was premature because it "did not have sufficient evidentiary material upon which to decide the factual issue." The ruling then added that the issue may be raised again "once sufficient information is before the Panel."
 {¶ 28} The second document is the "Ruling," which is stamped September 22, 2003. This document indicates that the "Ruling" is a consideration of the Woods renewed request for dismissal of the action on the basis that it was untimely filed, i.e. the demand for arbitration was not made within 60 days. The panel came to the conclusion that since Handel's "demand for arbitration encompasses more than a single event and the breach of the franchise agreement and since the parties agreed that questions and disputes were to be arbitrated, arbitration is proper. Thus, the arbitration is properly before the Panel." However, the panel did go on to explain that the word "dispute" as opposed to "questions as to the rights and obligations arising under the terms of the agreement," needed to be defined. The panel stated that this issue was left to the advocacy of the parties during the arbitration hearing. It specifically stated, "The Panel leaves open for the hearing of this matter what constitutes a `dispute' under the agreement and whether any particular dispute is time-barred."
 {¶ 29} The final document is the "Interim Award," which is dated December 3, 2003. This ruling states that the panel has previously considered the Woods affirmative defense that the claim was not timely filed, however, in all of these considerations it concluded that the claim was properly before the panel. The panel then readdressed the argument since in its prior holding it left the door open for the Woods to once again try to prove that the dispute occurred more than 60 days prior to the demand and that this untimeliness caused the claim to not be properly before the panel. It stated: "Respondents [the Woods] have failed to meet their burden of proof on this affirmative defense. Additionally, nothing new was presented at the hearing that convinces the Panel to reverse its prior decision finding the claim to be properly before it."
 {¶ 30} The above three documents establish that the arbitration panel viewed the timeliness issue and what constitutes a "dispute" under the contract as a factual determination. When parties submit their dispute to binding arbitration, they agree to accept the result regardless of its legal or factual accuracy. Portsmouth v. International Assn. ofFire Fighters, Local 512, 139 Ohio App.3d 621, 627,2000-Ohio-1975; Ford Hull-Mar Nursing Home, Inc. v. Marr, Knapp,Crawfis Assoc., Inc. (2000), 138 Ohio App.3d 174, 179;Cleveland v. Fraternal Order of Police, Lodge No. 8 (1991),76 Ohio App.3d 755, 758. Accordingly, an arbitration award is not subject to reversal simply because the reviewing court disagrees with the arbitrator's findings of fact. Motor Wheel Corp.,98 Ohio App.3d at 51-52 (stating, "Instead, a common pleas court is bound by an arbitrator's factual findings and serves only as a mechanism to enforce the arbitrator's award."). Thus, generally, appellate review does not extend to the merits of an arbitration award, i.e. perceived factual or legal error, without a showing of material mistake or extensive impropriety. ClevelandFraternal Order of Police Lodge No. 8, 76 Ohio App.3d at 758.
 {¶ 31} Therefore, considering all the above and the fact that the timeliness issue was a factual determination, the common pleas court's review and our review is very limited. The record in this case does show that the demand for arbitration occurred more than 60 days after the April 29, 2002 letter which notified the Woods that the franchise was being terminated. That said, the issue of timeliness was before the arbitration panel on three separate occasions. The arbitration panel's determination as to timeliness was dependent upon its interpretation of the word "dispute" and the interactions between the parties within the 60 days prior to the demand. The panel determined that the Woods had not satisfied their burden to prove this affirmative defense.
 {¶ 32} While this court does have part of the filings from the arbitration, we do not have the whole file, in particular we do not have a transcript of the arbitration hearing. Thus, without more in the record to support the claim that the demand was made after the 60 day time limit, we cannot conclude that the panel made a material mistake or committed extensive impropriety in deciding the timeliness issue. Thus, we cannot disturb the panel's determination. As such, this argument lacks merit.
 {¶ 33} As an aside, we note that the common pleas court's judgment entry does not specifically address the timeliness issue that was before it. The common pleas court should have addressed the issue in its judgment entry confirming the arbitration award. However, the common pleas court's confirmation order established that it found no merit with the timeliness argument made by the Woods. Thus, the issue is reviewable by this court.
 Authority to Determine Validity of Franchise Agreement {¶ 34} The Woods contend that the common pleas court erred when it held that all arguments as to the validity of the contract should have been raised to the arbitration panel. They assert that the arbitration clause in the franchise agreement does not cover the issue as to the contract's validity.
 {¶ 35} Handel's counters arguing that the common pleas court correctly determined that all issues as to the failure to comply with statutory law, i.e. enforceability/validity of the franchise agreement, could not be raised for the first time on appeal. It maintains that the Woods could not voluntarily participate in arbitration, never raise the issue of validity, and when the judgment is rendered in a way contrary to what they wanted, then claim that the franchise contract was not enforceable.
 {¶ 36} Handel's argument and reasoning is based upon the Eighth Appellate District case of Margus Co. v. City ofStrongsville (Nov. 17, 1983), 8th Dist. No. 46450. In Margus,
there was a construction contract containing an arbitration clause between Margus and the City of Strongsville. After completion of the construction project, a dispute arose over the final payment. Margus requested Strongsville to pay, in addition to the agreed upon periodic payment amount, a payment for damages due to the alleged delays caused by Strongsville. Strongsville rejected the damages request, which resulted inMargus demanding arbitration. The arbitration panel found forMargus and it then filed an application for an order confirming the award. The common pleas court confirmed the award.
 {¶ 37} One of the arguments Strongsville made to the common pleas court and to the appellate court was that the alleged contract was void because it failed to comply with a statutory mandate in R.C. 5705.41 (contract must be made with certification of adequate revenues). The Eighth Appellate District in affirming the common pleas court's confirmation of the award stated that while Strongsville was correct that the contract was void if it did not comply with R.C. 5705.41, that the issue of its compliance with R.C. 5705.41 was a factual matter that was not raised to the arbitration panel. Id. It then went on to explain:
 {¶ 38} "Strongsville did participate in the arbitration, but did not raise this as an issue of fact to be decided by the arbitration, nor did Strongsville bring a separate action to rescind or void their contractual obligation.
 {¶ 39} "This fact is critical to our decision. Once Strongsville voluntarily submitted to arbitration for full and final disposition of the controversy, and disposition was made, Strongsville was estopped from raising the illegality or unenforceability of the contract." Id. (internal citation omitted).
 {¶ 40} The Eighth Appellate District then went on to explain that a common pleas court's authority to vacate an arbitration award is found in R.C. 2711.10. Id. In this statute, the common pleas court's authority to vacate an award is "premised upon some misconduct or affirmative action taken by the arbitrators, which exceeds their authority. It may not be premised on an additional defense the losing party alleges in hindsight. To do so would eviscerate the purpose and spirit of arbitration, and preclude finality of any award." Id.
 {¶ 41} Margus is procedurally similar to the case at hand. Both Strongsville and the Woods argued that the contract was unenforceable due to statutory violations. Strongsville argued violations of R.C. 5705.41. The Woods argued violations of R.C. Chapter 1334, the Business Opportunity Purchasers Protection Act. Additionally, both waited to make these arguments until after the arbitration was completed.
 {¶ 42} Given that these cases are so similar and the fact that we find the Eighth Appellate District's reasoning persuasive, we hold that if the issue of enforceability/validity was not raised prior to the completion of arbitration, the party asserting that defense is estopped from raising it to the common pleas court during the confirmation process. It is unfair and judicially wasteful to permit a party to voluntarily submit to arbitration without raising the enforceability issue, and then when the arbitration decision is contrary to what they wanted, seek vacation from the common pleas court on the basis that the contract was unenforceable. Id. See, also, Rosser v. Hochwalt
(1967), 12 Ohio App.2d 129, 131 (stating "By submitting his answer and counterclaim to the arbitrator, he voluntarily submitted to the arbitration, thus acknowledging that the controversy is subject to the arbitration clause. He is thereby estopped to deny the authority of the arbitrator, after suffering an adverse award. Brennan v. Brennan (1955), 164 Ohio St. 29;Campbell v. Automatic Die Products Co. (1954),162 Ohio St. 321; Parks v. Cleveland Ry. Co. (1931), 124 Ohio St. 79.);Mahan v. Columbus Midway, Inc. (Nov. 10, 1981), 10th Dist. No. 81AP-387 (stating "Defendants cannot engage in the arbitration process without objection and then claim the original contract or the arbitration provision is invalid when an unfavorable award is made against defendants by the arbitrator.").
 {¶ 43} As Ohio Jurisprudence states:
 {¶ 44} "A party to a contract who voluntarily submits for arbitration a controversy arising under such contract for full and final disposition, as stipulated by the terms of the contract, has been held to be estopped, after the arbitration proceedings have progressed to a considerable extent, to raise the question of the illegality and unenforceability of the contract based on certain provisions therein." 6 Ohio Jurisprudence 3d (1978), Arbitration and Award Section 8.
 {¶ 45} Likewise, providing further support for the determination that the Woods cannot raise for the first time, after arbitration was completed, the defense that the contract was unenforceable/invalid in response to the motion to confirm, is recent Ohio Supreme Court case law. See City of Fostoria v.Ohio Patrolmen's Benevolent Assn., 106 Ohio St.3d 194,2005-Ohio-4558.
 {¶ 46} In Fostoria, the City of Fostoria laid-off all three full-time dispatchers. Due to the layoffs, police officers had to perform all dispatcher duties. This caused laid-off full-time dispatcher Grine to file grievances against Fostoria in accordance with the terms of the collective bargaining agreement (CBA) between the city and the Ohio Patrolmen's Benevolent Association (OPBA). Grine asserted that according to the CBA, patrol officers could not perform dispatcher duties for more than four hours a shift. Accordingly, Grine sought the return of all three full-time dispatchers to work.
 {¶ 47} The parties were unable to resolve the dispute; as such, in accordance, with the CBA, the matter was submitted to binding arbitration. The arbitrator ordered Fostoria to reinstate all three full-time dispatchers.
 {¶ 48} Fostoria then filed a motion with the common pleas court to vacate and modify the arbitration award. The trial court reviewed the award and determined that the CBA did not contemplate group grievances and that the arbitrator had not ruled on a matter properly before him in extending the order to non-grieving dispatchers.
 {¶ 49} On appeal, the court of appeals affirmed the common pleas court's judgment. The OPBA then appealed that decision to the Ohio Supreme Court. Among other issues, it argued that the common pleas court exceeded its scope of review in ruling on an issue that Fostoria had failed to present during arbitration.
 {¶ 50} In addressing this issue, the Supreme Court stated the following:
 {¶ 51} "An arbitrator derives his authority from the express terms of the collective-bargaining agreement between the parties.Ohio Office of Collective Bargaining v. Ohio Civil Serv.Employees Assn., Local 11, AFSCME, AFL-CIO (1991),59 Ohio St.3d 177, 183. The city, however, never addressed the issue of whether the CBA permitted the parties to arbitrate a group or class grievance during the arbitration proceedings. Instead, the sole issue presented to the arbitrator concerned whether the city had violated the agreement by using patrol officers to perform the duties of all three dispatchers. Based on the unique facts of this case, this record demonstrates that the parties implicitly authorized the arbitrator to resolve this case as a class grievance. `As this court has often noted, "[i]t is the well-settled rule that a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." Lester v. Leuck (1943), 142 Ohio St. 91. See, also, State ex rel. Johnson v. Ohio Adult Parole Auth.,95 Ohio St.3d 463, 2002-Ohio-2481, ¶ 6. In State v. Kollar (1915),93 Ohio St. 89, 91, 112, this court held: {¶ 52} "`The law imposes upon every litigant the duty of vigilance in the trial of a case, and even where the trial court commits an error to his prejudice, he is required then and there to challenge the attention of the court to that error, by excepting thereto, and upon failure of the court to correct the same to cause his exceptions to be noted.
 {¶ 53} "`It follows therefore that, for much graver reasons, a litigant cannot be permitted, either intentionally or unintentionally, to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible.' This rationale applies equally to arbitration proceedings." Fostoria,106 Ohio St.3d 194, at ¶ 11-14.
 {¶ 54} While the case at hand and Fostoria are factually distinguishable, it still lends general support for the proposition that the Woods were required to raise the defense of invalidity/unenforceability of the contract to the arbitration panel and/or the trial court prior to the completion of arbitration. As explained above, in Fostoria, the Supreme Court held that Fostoria could not argue after the fact that class grievances could not be arbitrated under the CBA. The voluntary submission to arbitration was implicit authorization that the arbitrator could decide the disputed issues. Analogously, the Woods cannot voluntarily submit to arbitration and then argue to the common pleas court, after the arbitration is completed, that the panel lacked authority to decide the issue because a valid franchise agreement was never in place. Voluntarily submitting the disputes that arose from breaching the franchise agreement to the panel was an implicit affirmation that a valid franchise agreement was in place and authorized the panel to decide the issues presented to it.
 {¶ 55} That said, we do acknowledge that the Woods cite to cases for the proposition that the enforceability/validity of the entire contract is a matter for the court, not the arbitration panel, to decide upon an examination of the contract. SeeGaffney v. Powell (1995), 107 Ohio App.3d 315, 319 (stating that the issue of whether a controversy is arbitrable under an arbitration provision of a contract is a question of law for the court to decide upon an examination of the contract). While this statement of the law is accurate, the cases cited by the Woods are procedurally distinguishable from the matter at hand. In none of the cases cited did the parties complete arbitration on an issue separate from the validity of the entire contract, and then raise the issue of enforceability/validity for the first time in the common pleas court when the prevailing party was moving to confirm the award. Furthermore, the fact that the enforceability of a contract is a determination for the common pleas court does not negate the Woods' duty to raise this issue prior to completion of arbitration.
 {¶ 56} Raising the issue in the manner it did is backwards and a possible waste of time, money, and resources. If the Woods had a concern about the enforceability/validity of the contract it should have been raised to the arbitration panel, and/or common pleas court prior to the completion of arbitration. Arbitration would not have occurred if the contract was not valid.
 {¶ 57} Thus, considering all the above, we find that the trial court committed no error in determining that the enforceability/validity issue should have been raised prior to the completion of arbitration. This assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 58} "THE COURT BELOW ERRED BY CONFIRMING AND NOT VACATING AN ARBITRATION AWARD THAT IS CONTRARY TO PUBLIC POLICY."
 {¶ 59} The Woods argument under this assignment of error is that the common pleas court erred when it failed to vacate the arbitration award on the basis that the award violated public policy. The violation of public policy they are alleging is that "the Award was based on a franchise agreement that is violative of Ohio statutes and the case law construing those statutes."
 {¶ 60} This argument is similar, if not exactly the same, as the second argument under the first assignment of error. The essence of both arguments is that the franchise agreement is unenforceable because Handel's failed to comply with numerous requirements in R.C. Chapter 1334, the Business Opportunity Purchasers Protection Act.
 {¶ 61} As such, our analysis under the second part of the first assignment of error equally applies to this assignment of error. Since the Woods voluntarily submitted to arbitration without raising, prior to its completion, the defense that the contract was enforceable, they could not later argue to the common pleas court that the award could not be confirmed because the contract was unenforceable.
 {¶ 62} However, even if we were to disregard that logic and address whether the award violated public policy, this assignment of error would still fail because assuming that public policy is a basis for vacation, the alleged public policy would not justify reversal. The United States Supreme Court has cautioned that the public policy "must be well defined and dominant, and is to be ascertained by `reference to the laws and legal precedents and not from general consideration of supposed public interest.'"Southwest Ohio Regional Transit Auth. v. Amalgamated TransitUnion, Local 627, 91 Ohio St.3d 108, 112, 2001-Ohio-294, quotingW.R. Grace Co. v. Local Union 759, Internatl. Union of UnitedRubber, Cork, Linoleum and Plastic Workers of America (1983),461 U.S. 757, 766, quoting Muschany v. United States (1945),324 U.S. 49, 66.
 {¶ 63} As stated above, the public policy claimed to be violated is that the franchise agreement did not comply with statutory mandates in R.C. Chapter 1334, Business Opportunity Purchasers Protection Act. According to the Woods, it would violate public policy to allow an arbitration award on a contract that did not comply with statutory law.
 {¶ 64} The fact that an arbitration panel grants an award on a franchise agreement which does not allegedly conform to Ohio law is not clearly against public policy. While case law does state that a violation of the Business Opportunity Purchasers Protection Act voids the contract, RY/EH Inc. v. ArthurTreachers, Inc. (1996), 115 Ohio App.3d 332, there is no case to support the proposition that failing to comply with the statute is against public policy.
 {¶ 65} "Public policy is the community common sense and common conscience, extended and applied throughout the state to matters of public morals, health, safety, welfare, and the like."Eagle v. Fred Martin Motor Co., 157 Ohio App.3d 150,2004-Ohio-829, ¶ 64, quoting 17 Ohio Jurisprudence 3d (1980) 528, Contracts, Section 94. A contract failing to comply with R.C. Chapter 1334, does not fall within this definition. Consequently, this argument fails.
 {¶ 66} Furthermore, it has been stated that in addressing public policy arguments, courts must be mindful that freedom to contract is fundamental, Blount v. Smith (1967),12 Ohio St.2d 41, 47, and that an agreement freely entered into between the parties should not be lightly disregarded unless it clearly contravenes an established public interest. Zivich v. MentorSoccer Club, Inc. (Apr. 18, 1997), 11th Dist. No. 95-L-184, citing Baltimore Ohio Southwestern Ry. Co. v. Voigt (1900),176 U.S. 498. Accordingly, for all of those reasons, this assignment of error lacks merit.
 CASE NO. 05MA70 ASSIGNMENT OF ERROR NUMBER ONE {¶ 67} "JUDGE SWEENEY'S FAILURE TO AWARD HANDEL'S PREJUDGMENT INTEREST MEASURED FROM THE UNDISPUTED DATE OF THE WOODS' BREACH OF THE FRANCHISE AGREEMENT WAS ARBITRARY AND AGAINST ESTABLISHED PRECEDENT."
 CROSS-ASSIGNMENT OF ERROR NUMBER ONE {¶ 68} "THE ISSUE OF WHETHER HANDEL'S WAS ENTITLED TO INTEREST FROM THE DATE OF THE BREACH TO THE DATE OF THE ARBITRATION AWARD SHOULD HAVE BEEN SUBMITTED TO AND DECIDED BY THE ARBITRATION PANEL. SINCE INTEREST WAS NOT AWARDED BY THE ARBITRATION PANEL THE COURT BELOW SHOULD NOT GRANT INTEREST THAT COULD HAVE BEEN BUT WAS NOT PART OF THE ARBITRATION AWARD."
 {¶ 69} Assignment of error number one and the cross-assignment of error are addressed simultaneously since both deal with whether the trial court's grant of prejudgment interest was correct. Handel's argues that the trial court erred in computing the award of prejudgment interest, i.e. that instead of awarding $14,019.40 in prejudgment interest, the trial court should have granted $99,927.74 in prejudgment interest. The Woods argue that it was within the trial court's discretion to award prejudgment interest from the date that the arbitration panel stated was the date the judgment was due and payable, and not from the date of the breach. Alternatively, in what is labeled a cross-appeal, the Woods argue that prejudgment interest was not appropriately granted because Handel's should have sought these damages from the arbitration panel, not from the trial court.
 {¶ 70} The first issue that must be addressed is whether the trial court should have denied prejudgment interest on the basis that it should have been raised to the arbitration panel, i.e. the cross-assignment of error. This issue is addressed first, rather than last, because of its possible disposition of the remaining arguments.
 {¶ 71} In its judgment entry, the trial court states the following:
 {¶ 72} "Defendant [the Woods] argues that in order for Handel's to be entitled to prejudgment interest, Plaintiff [Handel's] had to make this request to the arbitration board. Defendant [the Woods] is mistaken. Pursuant to O.R.C. 1343.03(A), prejudgment interest is not available unless there is an amount due and payable. Thus, only after the arbitration award was made, could Handel's move for prejudgment interest." 04/12/05 J.E.
 {¶ 73} Recently, the Ohio Supreme Court has addressed prejudgment interest and an arbitration panel's authority to award it. Miller v. Gunckle, 96 Ohio St.3d 359, 2002-Ohio-4932.
 {¶ 74} In Miller, the arbitration panel awarded Miller damages and prejudgment interest from the date of the accident.Gunckle filed a motion for reconsideration to the arbitration panel. The arbitration panel reconsidered its ruling and determined that while the damage award should stand and prejudgment interest should be awarded, the trial court was in a better position to determine the date from which prejudgment interest should be calculated.
 {¶ 75} Miller then filed with the trial court a motion for an award of prejudgment interest, or in the alternative an order affirming the original arbitration award including interest. The trial court confirmed the arbitration award for damages, but held that the arbitration panel could not award prejudgment interest. It then awarded prejudgment interest from the date the case was submitted to the arbitrators. The case was then appealed to the Twelfth District Court of Appeals.
 {¶ 76} The Twelfth Appellate District, solely addressing the trial court's ruling on the prejudgment issue, affirmed part of the trial court's ruling, reversed part of it and remanded it for further proceedings. Miller v. Gunckle (Dec. 11, 2000), 12th Dist. No. CA2000-02-026. First, the appellate court held that an arbitration panel has no jurisdiction to reconsider its ruling. Id. Thus, it held that "the trial court, therefore, erred by recognizing as binding the arbitrators' second award of interest." Id. The appellate court then went on to explain that while the trial court erred in recognizing the arbitrators' second award, it did not err in vacating the arbitrators' award on prejudgment interest. It held that the arbitration panel had no authority to issue an award of prejudgment interest. Id. It explained that an arbitration award is not a judgment until it is confirmed by the court of common pleas and, thus, under the prejudgment interest statute an unconfirmed arbitration award is not a judgment from which prejudgment interest arises. Id. It held that the arbitration panel exceeded its powers when it awarded prejudgment interest. Id.[1]
 {¶ 77} The Ohio Supreme Court reversed the appellate court's ruling and remanded the case back to the trial court to reinstate and confirm the arbitration panel's first award in all respects.Miller, 2002-Ohio-4932, at ¶ 32. In so holding, the Court explained that the arbitration panel had the authority to award prejudgment interest. It explained that:
 {¶ 78} "`For a dispute resolution procedure to be classified as "arbitration," the decision rendered must be final, binding and without any qualification or condition as to the finality of an award.' Schaefer v. Allstate Ins. Co. (1992),63 Ohio St.3d 708, 711. An arbitration award may be challenged only through the procedure set forth in R.C. 2711.13 and on the grounds enumerated in R.C. 2711.10 and 2711.11. Id. `The jurisdiction of the court to review arbitration awards is thus statutorily restricted; it is narrow and it is limited.' Warren Edn. Assn. v. Warren CityBd. of Edn. (1985), 18 Ohio St.3d 170, 173.
 {¶ 79} "* * *
 {¶ 80} "Moreover, `[t]he right to interest, the date from which interest should accrue, and the rate of interest involve questions of law and fact properly left to the discretion of the arbitrators.' 3 Macneil, Speidel Stipanowich, Federal Arbitration Law: Agreements, Awards, and Remedies under the Federal Arbitration Act (1999), Section 36.7.1.1. In the absence of language restricting the authority of an arbitrator to review a particular subject matter or to award a particular remedy, courts will generally hold that an arbitrator has the authority to make the award and to fashion a remedy even though the agreement is silent on the issue of remedial authority. QueenCity Lodge No. 69, Fraternal Order of Police, Hamilton Cty.,Ohio, Inc. v. Cincinnati (1992), 63 Ohio St.3d 403." Id. at ¶ 10, 19.
 {¶ 81} In so stating, the Court explained that only if the arbitration panel exceeded its authority would the prejudgment interest award be reversed. It concluded that since nothing in the record indicated that the arbitration panel's authority was limited in any manner by agreement of the parties or by order of the trial court, that the panel had not exceeded its authority to determine prejudgment interest and the date from which it should be ordered. Id. at ¶ 18. In addition, the Supreme Court cited the local rules of the trial court, which state that the board of arbitration shall have the general powers of the court. Id. Thus, it concluded that the general powers accorded to the court were delegated to the arbitration panel, including the power to award interest under R.C. 1343.03. Id.
 {¶ 82} In the instant case, there is nothing in the arbitration contract which limits the panel from deciding prejudgment interest. "In the absence of language restricting the authority of an arbitrator to review a particular subject matter or to award a particular remedy, courts will generally hold that an arbitrator has the authority to make the award and to fashion a remedy even though the agreement is silent on the issue of remedial authority." Id. at ¶ 19, citing Queen City Lodge No.69, 63 Ohio St.3d 403. Furthermore, the local rules of the Mahoning County Common Pleas Court stated that the arbitration panel "shall have the general power of a court, including, but not limited to, the following powers." Loc.R. 6(H)(3). The local rule then lists the powers it includes. The power to award prejudgment interest is not listed in the rule. However, the language of the rule indicates that it is not an inclusive rule. Thus, the arbitrators would have had the authority to award prejudgment interest. Since they could award it, the issue then becomes was Handel's required to request from the arbitration panel prejudgment interest or, as was done in this case, was Handel's permitted to raise the issue only to the common please court.
 {¶ 83} In a Ninth Appellate District case, the court was asked to determine whether the trial court erred when it held that the issue of prejudgment interest under R.C. 1343.03(A) should have been first made to the arbitration panel. The trial court held that the request should have been first made to the arbitration panel, and since it was not, the trial court denied the prejudgment interest request. Feist v. Plesz, 9th Dist. No. 21312, 2003-Ohio-2843, ¶ 21. The Ninth Appellate District held that the trial court did not abuse its discretion in ruling as such. Id. In so holding it cited Miller.
 {¶ 84} Yet, Miller and Feist do not stand for the proposition that a common pleas court errs when it grants prejudgment interest even though the request was not first made to the arbitration panel. R.C. 1343.03(A) states that prejudgment interest can be granted upon "all judgments, decrees, and orders of any judicial tribunal." The court of common pleas is a judicial tribunal and its order confirming the arbitration award is a judgment. Thus, it does have the authority to award prejudgment interest. Therefore, we find no error with the common pleas court's grant of prejudgment interest despite the fact that it was not first raised to the arbitration panel.
 {¶ 85} Accordingly, if an arbitration clause or contract clearly does not prevent an arbitration panel from deciding the issue of prejudgment interest, and in the absence of a court rule to the contrary, the prevailing party can submit that issue to the panel or a common pleas court. However, logic dictates that the panel may be better situated to decide the issue.
 {¶ 86} The reason for this is based upon judicial economy. As previously stated, arbitration is not a "junior varsity trial court." The proceeding rendered is a final and binding decision. Thus, the panel should decide all factual and legal issues, including prejudgment interest. Furthermore, the common pleas court's review of an arbitration award is very limited. Allowing the common pleas court to decide prejudgment interest when it could have been decided by the panel removes part of the benefit that arbitration (lessening a common pleas court's docket) gives to the judicial system. Thus, it would be more logical and preferable for the panel to decide the issue.
 {¶ 87} That said, we find no merit with the cross-assignment of error. Accordingly, we will now address the remaining arguments regarding prejudgment interest.
 {¶ 88} The remaining arguments deal with the date from which prejudgment interest was granted. The trial court granted it from the date the arbitration panel's award became due, which was February 16, 2004. Handel's argues that prejudgment interest should have been awarded from the date of the breach, which was January 23, 2001, and to hold otherwise is not fully compensating them. The Woods, on the other hand, argue that the trial court did not abuse its discretion and to award interest from the date of the breach would grant Handel's a windfall.
 {¶ 89} Under R.C. 1343.03(A), a trial court has discretionary review over when the interest is to accrue. See Dwyer Elec.,Inc. v. Confederated Builders, Inc. (Oct. 29, 1998), 3d Dist. No. 3-98-18. Courts have stated that, "In order to make the aggrieved party whole, the party is compensated for the periodof time between accrual of the claim and judgment, regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court." Mayer v.Medancic, 11th Dist. Nos. 2000-G-2311, 2000-G-2312 and 2000-G-2313, 2001-Ohio-8782, 2001-Ohio-8784, citing Royal Elec.Constr. Corp., v. Ohio State Univ., 73 Ohio St.3d 110, 116,1995-Ohio-131. (Emphasis added).
 {¶ 90} The Ohio Supreme Court has stated the following:
 {¶ 91} "Whether the prejudgment interest in this case should be calculated from the date coverage was demanded or denied, from the date of the accident, from the date at which arbitration of damages would have ended if Grange had not denied benefits, or some other time based on when Grange should have paid Landis is for the trial court to determine. Upon reaching that determination, the court should calculate, pursuant to R.C.1343.03(A), the amount of prejudgment interest due Landis and enter an appropriate order." Landis v. Grange Mut. Ins. Co.,82 Ohio St.3d 339, 342, 1998-Ohio-387. Accordingly, broad discretion is granted to the trial court to determine the accrual date of the prejudgment interest under R.C. 1343.03(A).
 {¶ 92} The Woods cite this court to three cases, which they believe stand for the proposition that a trial court does not abuse its discretion when it awards prejudgment interest from the date of the arbitration award. Plastech Engineered Products,Inc., v. Cooper Standard Automotive, Inc., 3d Dist. No. 5-03-26,2003-Ohio-6984; Erie Cty. Sheriff v. Fraternal Order of Police
(Dec. 22, 2000), 6th Dist. No. E-99-075; Board of Trustees ofMiami Twp. v. Fraternal Order of Police (May 15, 2000), 12th Dist. Nos. CA99-03-028 and CA99-04-031.
 {¶ 93} In the first case, Plastech, the appellate court ruled that the trial court did not err in awarding interest beginning five days after the arbitrator's award. It explained that this ruling adhered to the language of R.C. 1343.03(A) and the language of the purchase agreement at issue. Plastech,2003-Ohio-6984, at ¶ 15. The purchase agreement dictated the amount of damages would be due five days after the amount was determined.
 {¶ 94} In the second case, Erie Cty. Sheriff, the appellate court reversed the common pleas court's order vacating the arbitration award. The appellate court then went on to order prejudgment interest from the date of the arbitration award, not the date of the injury. Erie Cty. Sheriff, 6th Dist. No. E-99-075.
 {¶ 95} Likewise, in the third case, Board of Trustees ofMiami, the appellate court ordered prejudgment interest from the date of the arbitration award. Board of Trustees of Miami Twp.,
12th Dist. Nos. CA99-03-028 and CA99-04-031.
 {¶ 96} Consequently, considering all the above, the trial court did not abuse its discretion when it ordered the computation of prejudgment interest from the date the arbitration award was due. These assignments of error lack merit. The trial court's award of prejudgment interest was proper.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 97} "THE FRANCHISE AGREEMENT FULLY SUPPORTS HANDEL'S RIGHT TO RECOVER THE ATTORNEY'S FEES IT WAS FORCED TO SPEND IN ORDER TO HAVE THE BINDING ARBITRATION AWARD ENTERED AS A JUDGMENT."
 {¶ 98} Handel's also moved for the attorney fees it cost them to have the arbitration award confirmed. As stated earlier, the arbitration panel awarded Handel's attorney fees for the cost of the arbitration.
 {¶ 99} In ruling on the motion, the trial court stated that the franchise agreement, while providing for attorney fees for the arbitration, did not address any post-arbitration attorney's fees. 04/12/05 J.E. Thus, it concluded that Handel's would only be entitled to an award of attorney fees if the Woods acted in bad faith. 04/12/05 J.E. The trial court found that no evidence was presented that the Woods acted in bad faith. 04/12/05 J.E. Furthermore, it indicated that the record in this matter demonstrated that the Woods asserted a good faith belief that the franchise agreement was void as a matter of public policy.
 {¶ 100} Handel's argue that this ruling was erroneous. It contends that the franchise agreement allows for it to collect its attorney fees in seeking confirmation of the arbitration award. It contends that the confirmation process is an extension of the arbitration process and thus, is included in the franchise agreement. It claims that the fees were only incurred because the Woods ignored the terms of the franchise agreement, which states that the arbitration award is binding and conclusive and that the common pleas court "may not vacate, modify, or correct the award but shall only use its powers, both legal and equitable, to enforce the decision of the arbitrators."
 {¶ 101} The Woods argue that the franchise agreement clearly and unambiguously limit the attorney fees to the costs and expenses of arbitration. They contend that if this court finds that the agreement was ambiguous, they would still prevail on this claim because contracts that are ambiguous should be interpreted against the drafter, which in this case is Handel's.
 {¶ 102} A decision regarding an award of attorney fees is left to the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. Bowen v. Bowen (1999),132 Ohio App.3d 616, 642. An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 103} In Ohio, attorney fees are generally not awarded unless the other party acted in bad faith. See Gates v. City ofToledo (1897), 57 Ohio St. 105. However, that is not to say that parties cannot contract for the losing party to pay attorney fees.
 {¶ 104} The claim in this case arises solely from the contract, i.e. the franchise agreement. Handel's did not argue that the Woods acted in bad faith. Thus, only the language of the franchise agreement is at issue. Furthermore, it a well-founded legal principle that ambiguous contracts are construed against the drafter. Graham v. Drydock Coal Co., 76 Ohio St.3d 311,314, 1996-Ohio-393. It is uncontroverted that Handel's is the drafter. Thus, in order for Handel's to win on this claim, the language of the franchise agreement must be unambiguous and allow for post-arbitration attorney fees.
 {¶ 105} The language in the franchise agreement concerning attorney fees is as follows:
 {¶ 106} "The costs and expenses of arbitration, including the fees of the arbitrators, shall be borne by the losing party or in such proportions as the arbitrators shall determine." Franchise Agreement 19.03(vi).
 {¶ 107} We find that this language is unambiguous in that it only includes arbitration, not confirmation. The words "costs and expenses of arbitration" only address the arbitration and not the confirming of that arbitration award. Confirmation is a separate process from the arbitration, just as a trial is separate from an appeal. In the confirmation process the trial court reviews, even though in a limited sense, the arbitrators' award. Likewise, an appellate court reviews a trial court's award. Each is distinct and separate.
 {¶ 108} Furthermore, the last phrase, "or in such proportions as the arbitrators shall determine" indicates that the trial court's confirmation is not part of the arbitration. Once the arbitrators rule on the issues before them, their jurisdiction ceases. Miller, 2002-Ohio-4932. The case would then proceed to confirmation, and the arbitrators would have no authority to determine how to apportion the fees and costs. If confirmation were included as part of the arbitration instead of referring solely to the arbitrators in this last phrase, it would also include language about the common pleas court apportioning costs and fees. As it does not make any reference to the common pleas court, the word "arbitration" in the attorney fees clause of the franchise agreement does not encompass the confirmation.
 {¶ 109} As such, the parties did not contract for post-arbitration attorney fees. Handel's argument to the contrary lacks merit.
 CONCLUSION {¶ 110} For the reasons stated above, the trial court's decisions in appellate case numbers 04MA238 and 05MA70 are hereby affirmed.
Donofrio, P.J., concurs.
DeGenaro, J., Case No. 04 MA 238 — concurs. Case No. 05 MA 70 — concurs in part and dissents in part, see concurring in part and dissenting in part opinion.
[1] The appellate court also addressed the date from which prejudgment interest should be awarded. However, Miller deals with uninsured/underinsured motorist coverage and, as such, that ruling is inapplicable to this case.